# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MARGARET L. POSEY,
    Plaintiff,

vs.

STEVEN T. MNUCHIN,
SECRETARY OF TREASURY,
    Defendant.

Case No. 1:18-cv-299
Cole, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Margaret Posey, proceeding *pro se*, brings this action against defendant Steven Mnuchin, United States Secretary of the Treasury. This matter is before the Court on defendant's motion for summary judgment under Fed. R. Civ. P. 56 (Doc. 25), plaintiff's memorandum in opposition to the motion (Doc. 27), and defendant's reply memorandum (Doc. 28).

## I. Background

Plaintiff filed the complaint in this lawsuit on May 1, 2018. (Doc. 1). Plaintiff alleges that the Internal Revenue Service (IRS) and members of its senior management at the IRS's Covington, Kentucky duty station have engaged in ongoing retaliation and unlawful employment practices in violation of her civil rights. (*Id.* at PageID#: 5). Plaintiff contends she was methodically retaliated against for filing "a 2003 EEO (Equal Employment Opportunity) Charges" (sic) and that the retaliation was continually covered up. (*Id.* at PageID#: 6-7). Plaintiff alleges discrimination based on her race (African-American) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (Title VII) and based on her age in violation of the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621, *et seq.* Defendant moves for summary judgment on all claims.

## II. Facts

The Court has gleaned the relevant facts and procedural history from plaintiff's verified complaint[1], plaintiff's deposition testimony, and the documentation submitted by the parties. Defendant disputes many of plaintiff's allegations. The undisputed evidence shows that plaintiff is a 68-year old African-American female who has worked for the IRS for 20 years. (Doc. 1 at PageID#: 12). She was hired by the IRS in 1998 as a seasonal data entry clerk. (Doc. 23, Exh. 1 at PageID#: 893). In 2004, plaintiff was promoted to team leader responsible for supervising a team of data entry clerks. (Doc. 23 at PageID#: 631-32). From 2006 to 2010, plaintiff was in the Cadre Program, which prepared employees to become managers. (*Id*. at PageID#: 636-37). In 2010, plaintiff was promoted to permanent Supervisory Tax Examining Technician. (*Id*. at PageID#: 637-38). The grade level of her position was IR-11, which was the highest grade-level for that position.[2] (*Id*. at PageID#: 627, 658). Plaintiff supervised a team that performed service or clerical functions for other tax examining teams. (*Id*. at PageID#: 628). The team initially had 32 employees supervised by plaintiff, but the number decreased over time until she eventually supervised 11 employees. (*Id*.).

Plaintiff has filed several EEO charges with the IRS during the course of her employment. Plaintiff alleges this lawsuit arises out of incidents addressed in two EEO charges she filed in 2015 and 2016: IRS-15-1594-F and IRS-16-0224-F. (Doc. 1 at PageID#: 5, citing Exh. A-1). Plaintiff also makes multiple allegations in this lawsuit related to two earlier EEO

---

[1] Plaintiff's complaint is signed under penalty of perjury pursuant to 28 U.S.C. § 1746, and it therefore has the same force and effect as an affidavit for purposes of responding to defendant's motion for summary judgment. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992)).

[2] Under the IRS pay plan, lower numbered paybands designate positions with higher pay so that an IR-9 position is a higher paid position than an IR-11 position. (*Id*. at PageID#: 640).

charges she filed. Plaintiff alleges that over the course of 14 years since she filed her initial EEO charge, she has been subjected to a pattern and practice of discrimination, retaliation, and harassment. Plaintiff's allegations are difficult to follow at times. To establish the chronology of the alleged unlawful employment practices and place those practices in context, the Court begins by summarizing each of the EEO charges filed by plaintiff.

### 1. Initial EEO charge

Plaintiff testified at her deposition and alleged in her complaint that she filed her first EEO charge, No. 06-2136, in 2003. (Doc. 25-1, Plaintiff's Deposition, PageID#: 1270-71; Doc. 1 at PageID#: 9, citing Exh. B-6, Page ID#: 58). Plaintiff testified that her supervisor at the time, Pamela Masten (now known as Pamela Masten-Smith), signed plaintiff's name to a form related to the application process for a manager position while plaintiff was out on leave instead of writing "Employee unable to sign." (Doc. 25-1 at PageID#: 1270-71). Plaintiff claims Masten discriminated against her by forging plaintiff's signature and then hiring Masten's friend Lois Murphy, a white female, "for the Manager Position." (Doc. 1 at PageID#: 9, citing Exh. B-6). Plaintiff claims that the individual who ruled on her EEO claim, "EEOC (Equal Employment Opportunity Commission) Judge Momah," found that Masten did not discriminate plaintiff "when she forged her signature and presented it as a legal document"; however, plaintiff claims the judge failed to address alleged criminal acts of fraud and forgery that violated IRS policies and rules and plaintiff's civil rights. (Doc. 1 at PageID#: 9, citing Exh. B-6).

The documentation plaintiff has attached to the complaint indicates that plaintiff filed an EEO "complaint of discrimination," Case No. 06-2136, on December 27, 2005. (*See* Doc. 1, Exh. B-6, PageID#: 58). The Agency summarized her allegation of discrimination as follows: "On October 19, 2005, her manager deliberately falsified an eligibility/readiness form and forged

3

her signature to prevent her from qualifying for a management position." (*Id.*). Plaintiff amended the 2005 complaint of discrimination based on "reprisal for prior EEO complaint activity" on February 22, 2006. Plaintiff added to her original EEO complaint allegations that on January 6, 2006, her manager lowered her annual appraisal rating without justification, and on February 5, 2006, she was not selected for the position of Supervisory Data Transcriber or Lead Data Transcriber under five vacancy announcements. (*Id.*). Plaintiff has not submitted any documents related to a decision on the 2005 EEO complaint.

### 2. 2013 EEO charge

Plaintiff filed EEO charge No. IRS-13-0510-F on July 26, 2013. (Doc. 1, Exh. B-9 to B10, PageID#: 61-62; Doc. 25-1 at PageID#: 1272). Plaintiff alleged in the charge that the IRS discriminated against her based on her race, sex, and age and in reprisal for prior EEOC activity. (Doc. 1, Exh. B-10, PageID#: 62). Plaintiff alleged the following acts of discrimination and retaliation, as summarized by the Agency in its decision:

> 1. beginning September 2010 and continuing, although performing the same functions in the same job series, she is not at the same grade level nor receives the same pay as a white male counterpart;
>
> 2. beginning in 2011 and continuing, her supervisor has not taken proper actions to offer her any career developmental assignments. In support of this claim, Complainant states:
>
>> a. on August 9, 2013, management selected other Frontline Readiness Program (FLRP) candidates to fill permanent manager positions; and
>>
>> b. on August 21, 2013, management reversed its decision to allow her a 30-day acting assignment.
>
> 3. in April 2013, her supervisor undermined her managerial authority by:
>
>> a. permitting a peer to monitor her team's work flow and bringing untrained Tax Examiners into her unit to perform clerical duties;

b.  allowing that peer (referenced in claim 3a) to work overtime in her unit performing GS-4 duties; and

c.  along with that peer, going into her unit every day for a week to micromanage her team.

4.  on or about May 14, 2013, the Operations Manager reprimanded her for correspondence she had sent to the union representative, and when she refused to sign the reprimand document and started to leave, he told her to "get back here and sit down"; and

5.  on June 13, 2013, her supervisor made threatening remarks regarding her contacting the union by stating, "you better keep your mouth shut," and "they are just like the AFCIO and they get you?"

(*Id.*).

The Agency issued a final decision on March 4, 2015, finding that plaintiff had not established a prima facie case of race, sex, age, or "reprisal discrimination," and assuming she had, the Agency management had articulated legitimate, nondiscriminatory reasons for its actions, which plaintiff had failed to show were pretextual.   (*See Id.*, Exh. B-11, PageID#: 63). Plaintiff appealed the decision to the EEOC. (*Id.*).  She alleged that the Agency had ignored the factual evidence and based its findings "on technicalities and loop holes." (*Id.*).  She claimed the IRS had retaliated against her through harassment and discrimination based on "Race, Age, Gender and pay" for reporting her employer's violations. (*Id.*).  Plaintiff also stated that she found it "questionable" that her supervisor and manager had "unexpectedly retired after only months into the EEOC investigation." (*Id.*).  The EEOC issued its decision on May 9, 2017, upholding the Final Agency Decision (FAD) and informing plaintiff of her right to file a civil action in the appropriate United States District Court within 90 days of the date she received the EEOC's decision. (*Id.* at B-9 to B-18, PageID#: 61-70).

Plaintiff testified at her deposition about the incidents addressed in EEO complaint No. IRS-13-0510-F. Plaintiff testified that she made allegations against two of her supervisors, District Manager Rose McCabe and Betsy Rollins. (Doc. 25-1 at PageID#: 1272). Plaintiff testified that the EEO complaint related to a report she had made against a team member for a "violation" that involved keeping taxpayer and private employee documents in the employee's private notebook. Plaintiff explained that the employee met with the union, and the union in turn met with plaintiff. (*Id.* at PageID#: 1273). Plaintiff wrote an email to a union representative after the meeting complaining that the union representative she had met with was "very belligerent," and the email became part of the case. (*Id.*). According to plaintiff, her Department Manager McCabe was unhappy that plaintiff had used the term "ignorant" in the email when referring to the union representative, and McCabe "came at [plaintiff] . . . roughly." (*Id.* at PageID#: 1273-74). Plaintiff testified she "was told - - [she] was threatened and told that [she] better not say nothing to that employee." (*Id.* at PageID#: 1273). Rollins told plaintiff that "having [her] say would create long-time problems for [plaintiff] in the organization." (*Id.* at PageID#: 1274). Plaintiff said she filed a grievance over the incident and a report with the "EEO" because she took off work for three weeks after McCabe "got finished threatening and yelling and hollering at [plaintiff] because of something [she] followed the proper procedures on. . . ." (*Id.*).

The email plaintiff testified about is attached to the complaint. (Doc. 1, Exh. B-26, PageID#: 78). In the email dated May 10, 2013, plaintiff informed a union representative, Jacqueline Huff, that when plaintiff had spoken with union representative Beverly Johnson, plaintiff was "met with complete ignorance, disrespect and unprofessionalism. . . ." (*Id.*). She also described Johnson's behavior as "rule (sic), disrespectful and unprofessional," "hostile,"

"very argumentative," and possibly "intimidat[ing]." (*Id.*). Plaintiff said that Johnson "went from zero to 60 in a matter of second (sic)." Rollins sent plaintiff an email in response that reads in its totality: "In the future, do not send NTEU (National Treasury Employees Union) emails such as this. They never end well. The temporary gain of making your point will almost always result in long-term problems." (*Id.*).

### 3. 2015/2016 consolidated EEO charges

Plaintiff filed two EEO charges in 2015 and 2016 with the United States Treasury Department challenging alleged unlawful employment practices. (Doc. 1, Exh. A-1 to A-17, PageID#: 35-51). The charges, IRS-15-1594-F and IRS-16-0224-F, alleged discrimination on the basis of race and age and in retaliation for prior protected activity occurring on dates between 2014 and 2016. (*Id.*, Exh. A-1, PageID#: 35). The Agency summarized the acts of discrimination and retaliation that plaintiff alleged in IRS-15-1594-F, which she filed on October 6, 2015 and subsequently amended, as follows:

> 1. The Department Manager placed a derogatory handwritten note in [plaintiff's] Employee Performance File (EPF), which [plaintiff] discovered on August 14, 2015;
>
> 2. Plaintiff was not reassigned as management had promised; and
>
> 3. On September 4, 2015, management issued a counseling memorandum for an incident that occurred a month earlier.
>
> 4. Management continues to deny her developmental opportunities within her organization[.]

(*Id.*). Plaintiff alleged the following specific acts of discrimination and retaliation in IRS-16-0224-F:

> 1. On or about January 21, 2016, in response to complaints to the union by [plaintiff's] employees about [plaintiff's] actions as their supervisor, [plaintiff's]

manager reported [her] to the Agency's Anti-Harassment Policy point of contact and initiated a management inquiry into the allegations;

2. On March 29, 2016, [plaintiff's] manager issued her a memorandum regarding a Performance Feedback Conversation held on March 25, 2016, that contained criticism of [plaintiff]; and

3. In April 2016, [plaintiff's] senior managers interfered with and undermined instructions [plaintiff] gave to her team members[.]

(*Id.*, Exh. A-2). The Agency issued an FAD on January 25, 2018, finding no discrimination.

(*Id.*, Exh. A-1 to A-11). A copy of the decision was mailed to plaintiff on January 26, 2018.

(*Id.*, Exh. A-12). Plaintiff did not appeal the decision to the EEOC.

Plaintiff alleges in the complaint that she is appealing the decisions and findings of defendant on the 2015/2016 EEO complaints. (Doc. 1 at PageID#: 5). Plaintiff claims that since she filed the "2003" EEOC charge, the IRS and its senior management, enabled by the EEO, have engaged in a far-reaching "pattern and practice" of discrimination, harassment, and retaliation and a cover-up of the participants' corruption. (Doc. 1). She claims that the conspiracy implicates defendant Mnuchin, the IRS and its senior management, the EEOC and "EEOC Judge" Momah, IRS general counsel Josh Dmobrow, NTEU personnel, TIGTA (Treasury Inspector General for Tax Administration) Agent Stephanie Taylor, Regional Director of Compliance Examination Denice Vaughan, Director of Compliance Examination Brenda Dial, Director of Examination Ivy Chessney, Operation Director of Cincinnati Examination Steven Bowling, Director of Program Analysis-Cincinnati Examination Gregory Hudson, Tax Policy Analyst and former Department Manager SB/SE Jennifer Becker, Director of Cincinnati Compliance, SB/SE James Roger, Jr., and attorney Robert Klingler, who represented plaintiff for a brief period of time during her administrative proceedings. (*Id.*).

## III. Defendant's motion for summary judgment

### 1. Rule 56 standard

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "[A] party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. *See also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1982). The movant may do so by identifying that the non-moving party lacks evidence to support an essential element of its case. *See Barnhart v. Pickrel, Shaeffer & Ebeling Co. L.P.A.*, 12 F.3d 1382, 1389 (6th Cir. 1993).

Evidence in the record is viewed in the light most favorable to the nonmoving party, with all reasonable inferences drawn to that party's benefit. *Combs v. Int'l Ins. Co.,* 354 F.3d 568, 576-77 (6th Cir. 2004) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970)). Summary judgment is appropriate only where the evidence raises no genuine issues of material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

Because plaintiff is a pro se litigant, her filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings); *Haines*

*v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent standards than formal pleadings drafted by lawyers).

## 2. Non-exhausted claims

Defendant moves for summary judgment on certain claims on the ground plaintiff did not timely exhaust her administrative remedies. (Doc. 25). Exhaustion of administrative remedies is a precondition to filing a Title VII lawsuit. *Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008) (citations omitted). An employee who does not first exhaust her administrative remedies is precluded from bringing a Title VII action in federal court. *Flowers v. Potter*, No. 3:05-cv-052, 2008 WL 697630, at *7 (S.D. Ohio 2008) (citing *Tisdale v. Fed. Express Corp.,* 415 F.3d 516, 527 (6th Cir. 2005)). *See also Schaefer v. U.S. Postal Service*, 254 F. Supp. 2d 741, 752 (S.D. Ohio 2002). Failure to exhaust administrative remedies in a timely manner is an affirmative defense which the defendant bears the burden of pleading and proving. *Lockett*, 259 F. App'x at 786 (citations omitted).

An employee who brings a Title VII claim against her federal employer or who alleges discrimination on the basis of her age must timely exhaust her administrative remedies as set forth in the EEOC regulations. *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 993 (6th Cir. 2009) (citing *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991)). A federal employee must take several steps to exhaust her administrative remedies. *Lockett*, 259 F. App'x at 786. First, the employee must initiate contact with an EEO counselor within 45 days of the allegedly discriminatory action to attempt to informally resolve the matter. *Id.* (citing 29 C.F.R. § 1614.105(a)(1)). Second, the employee must file an individual complaint of discrimination with the agency that allegedly discriminated against her within prescribed time limits. *Id.* (citing 29 C.F.R. § 1614.106(a) at PageID#: 1165-66). Third, the individual must obtain an FAD. *Id.*

(citing 29 C.F.R. § 1614.110(a)). The employee may appeal the FAD to the EEOC within 30 days of its receipt. *Id.* (citing 29 C.F.R. § 1614.402(a)). In the alternative, the employee can file a civil action in district court. *Id.* (citing 29 C.F.R. § 1614.407). The time limits for filing a civil suit are: "(a) Within 90 days of receipt of the [FAD] if no appeal has been filed; (b) After 180 days from the date of filing an individual . . . complaint if an appeal has not been filed and final action has not been taken; (c) Within 90 days of receipt of the Commissioner's final decision on an appeal; or (d) After 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission." 29 C.F.R. § 1614.407(a)-(d); *see also* 42 U.S.C. § 2000e-16(c).[3] Receipt of the FAD is presumed five days after mailing. *See Rembisz v. Lew*, 590 F. App'x 501, 503 (6th Cir. 2014).[4]

"[E]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *George v. City of Cincinnati*, No. 1:16-cv-688, 2018 WL 1305465, at *2 (S.D. Ohio Mar. 12, 2018) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, (2002), *superseded in non-relevant part by statute,* Lily Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5. "Discrete

---

[3] Section 2000e-16(c) states: "Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the [EEOC] upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination . . . brought pursuant to subsection (a) of this section . . ., or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the [EEOC] on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee . . ., if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e-16(c).

[4] As an alternative to this procedure, an individual "may file a civil action in a United States district court under the ADEA against the head of an alleged discriminating agency after giving the Commission not less than 30 days' notice of the intent to file such an action." 29 C.F.R. § 1614.201(a). The notice must be filed in writing with the EEOC, by personal delivery, or by facsimile "within 180 days of the occurrence of the alleged unlawful practice." *Id.*

discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* (quoting *Morgan*, 536 U.S. at 113). If the plaintiff brings a claim for a hostile work environment, the claim "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.* (quoting *Morgan*, 536 U.S. at 122). A hostile environment claim differs by its very nature from discrete acts because it "involves repeated conduct." *Id.* (quoting *Morgan*, 536 U.S. at 115). Thus, to determine whether a claim is time-barred, the Court must "determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Id.* (quoting *Morgan*, 536 U.S. at 120).

Defendant argues that plaintiff did not timely exhaust the following claims:

- Claims related to her "lateral" transfer in 2018
- Claims related to the 2017 management inquiry that precipitated that transfer
- Claims related to any IRS employment actions or decisions that occurred prior to July 4, 2015

(Doc. 25 at PageID#: 1165-66). The Court finds that the undisputed evidence shows plaintiff failed to exhaust her administrative remedies as to these claims.

### A. *Plaintiff's reassignment in 2018*

Defendant contends that plaintiff never contacted the EEO and did not pursue her administrative remedies regarding her transfer to a non-supervisory position in 2018. Instead, plaintiff admittedly brought the claim directly to this Court. (*Id.*, citing Doc. 25-1 at PageID#: 1263-66). Plaintiff's deposition testimony confirms that plaintiff did not contact an EEO counselor and did not otherwise proceed through the administrative process on any claim related to her transfer in 2018. (*Id.*). Plaintiff simply tacked her claim related to her transfer onto the

other claims she brings in this lawsuit, which she alleges arose out of the 2015 and 2016 EEO charges. Plaintiff has not produced evidence to show that her 2018 transfer was part of an ongoing pattern and practice of retaliation or discrimination based on her race or age, or that her transfer was otherwise related to the incidents addressed in the 2015 and 2016 charges. Thus, there is no dispute that plaintiff did not exhaust her administrative remedies for any claims of retaliation or discrimination based on her 2018 transfer as required under the statutory and regulatory scheme. Defendant is entitled to summary judgment on plaintiff's claims premised on her 2018 job transfer.

## B. The 2017 management inquiry

Defendant contends that plaintiff did not present an informal complaint to the EEO or otherwise pursue her administrative remedies regarding the IRS management inquiry that led to her 2018 transfer. (Doc. 25 at PAGEID#: 1161, citing Doc. 25-1, Exh. 44, PageID#: 1587). Internal IRS documentation shows that in response to a harassment complaint that a subordinate employee made against plaintiff in November 2017, IRS management initiated an inquiry as required by the IRS Anti-Harassment Policy. (Doc. 25-1, Exh. 44). Greg Hudson, the Acting Director, Examination-Cincinnati, wrote a memorandum to plaintiff dated March 9, 2018, regarding the inquiry. He wrote, in relevant part:

> The Anti-Harassment inquiry report was completed by an independent management official outside the Cincinnati Examination/AUR organization. You were notified of the Anti-Harassment inquiry and declined to meet with the independent management official conducing [sic] the inquiry. . . .
>
> The official conducting the inquiry spoke with several current and former group members. He recommended that you should be removed from a managerial role and reassigned to a non-supervisory position in another workgroup based on his findings, including that a toxic environment exists in your workgroup.

13

> I agree with the recommendation in the Anti-Harassment Inquiry Report. Effective, March 11, 2018 I am laterally reassigning you to a non-supervisory position on the Operation Manager's staff as a GS-0344-07 Management and Program Assistant. This reassignment does not lower your current salary and is not an adverse action. . . .

(*Id*.). Plaintiff does not dispute that she failed to contact an EEO counselor about the inquiry and to pursue her administrative remedies with respect to it. Plaintiff failed to exhaust her administrative remedies on any claim arising from the management inquiry that led to her reassignment to a different position in March 2018. Defendant is entitled to summary judgment on any claim of retaliation or discrimination based on this employment action.

### C. Employment actions which pre-date July 4, 2015

Defendant contends that plaintiff cannot pursue claims related to any employment decisions or actions that occurred prior to July 4, 2015. Defendant alleges that plaintiff's initial contact with the EEO in connection with the two EEO charges that gave rise to this lawsuit was on August 18, 2015. (Doc. 25 at PageID#: 1166, citing Doc. 1-1, PageID#: 35). Thus, any actions that predate her contact with the EEO by more than 45 days are time-barred under 29 C.F.R. § 1614.105(a)(1). (*Id*.).

Plaintiff attempts to incorporate into her complaint each of the pre-July 4, 2015 employment actions by alleging a continuing "pattern and practice" of retaliation, discrimination, and harassment that followed the filing of her initial EEO complaint, which she allegedly filed in 2003. Plaintiff alleges there was a wide-ranging conspiracy against her that involved everyone from the administrative judge who decided the claims against her, to the employees she supervised who lodged complaints of harassment against plaintiff. (Doc. 1). However, plaintiff has not produced any evidence that draws a link between the individuals and employment actions

she complains about. Plaintiff does no more than allege a series of discrete incidents that have no apparent connection other than they were employment-related actions that occurred while plaintiff was employed at the Covington, Kentucky duty station.

Further, plaintiff's own allegations appear to belie her claim that she was subjected to a pattern and practice of discrimination and retaliation that began in 2003. Plaintiff alleges in the complaint that she "never encountered any problems in management until she was hired to manage the Clerical Team in 2010." (Doc. 1 at PageID#: 12). She alleges she received a "Manager award in 2017" and her annual ratings were "Outstanding" and "Exceed" until 2013, when "she filed an additional EEO (sic) for being punished by her Manager for protecting the Agency." (*Id.*). Plaintiff further alleges that when she asked to be reassigned, it was "because of the negative and abusive behavior of her employees" rather than actions of IRS management. (*Id.*).

Regardless of when the alleged discrimination and retaliation she complains about began, it is clear from the allegations of the complaint that plaintiff perceived herself to be the victim of an ongoing series of discriminatory and retaliatory employment actions. However, there is no evidence in the record to show that each of the employment actions she complains about were part of a "pattern or practice" or "the same actionable hostile work environment practice." *Morgan*, 536 U.S. at 120. Plaintiff failed to timely exhaust her administrative remedies for any incidents that occurred prior to July 4, 2015. Defendant is entitled to summary judgment on any such claims.

### D. Claims that plaintiff did not raise in the complaint

Defendant argues that plaintiff cannot pursue claims for violations of her First Amendment and due process rights, which she first raised in response to defendant's motion for

summary judgment. (Doc. 28 at PageID#: 1732-33). Defendant contends that because plaintiff did not assert these claims in her complaint, she is barred from bringing them in this lawsuit.

"It is well-settled that a plaintiff may not expand [her] claims to assert new theories in response to summary judgment. . . ." *Renner v. Ford Motor Co.*, 516 F. App'x 498, 504 (6th Cir. 2013) (citing *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007)). Instead, if the plaintiff wishes to expand her claims "mid-stream," then "the proper procedure . . . is to amend the complaint in accordance with [Fed. R. Civ. P.] 15(a)." *Vonderhaar v. Waymire*, __ F. App'x __, 2020 WL 238280, at *7 (6th Cir. Jan. 15, 2020) (quoting *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2723 (3d ed. Supp. 2005)). The purpose of the rule is to protect defendant from "unfair surprise" when he moves for summary judgment. *Id.*

Plaintiff did not present a claim for violation of her First Amendment rights against defendant in the complaint. She makes one reference to the First Amendment in her complaint, stating:

> "1st Amendment - Ms. Berte stated in her handwritten note which she placed in the Plaintiff's Employee Performance File (EPF) File. Mr. Mnuchin did not consider Ms. Bert's malicious and Retaliatory action with malice to punish the Plaintiff in his Finding/Decision the First Amendment - Freedom of Speech nor did he conclude that an Employees' opinions are not placed in an Employees EPF because the EPF only pertains The Employees' Performance."

(Doc. 1 at PageID#: 10). This allegation is unintelligible, and plaintiff has not fleshed it out in her response in opposition to defendant's motion for summary judgment. (Doc. 27). Plaintiff therefore may not pursue a claim for violation of her First Amendment rights.

Plaintiff claims for the first time in her memorandum in opposition to defendant's motion for summary judgment that defendant violated her due process rights. (Doc. 27). Plaintiff appears to allege that she has not been afforded her constitutional due process rights in connection with the administrative proceedings and the IRS's internal procedures. Because plaintiff first raised her claim in opposition to defendant's motion for summary judgment, defendant has not had an opportunity to address plaintiff's claim. Plaintiff therefore may not pursue her due process claim in this lawsuit.

### 3. Plaintiff's exhausted Title VII and ADEA claims

Defendant contends he is entitled to summary judgment on plaintiff's remaining claims of discrimination and retaliation addressed by the Agency in its FAD issued on January 25, 2018. (Doc. 25 at PageID#: 1167-85). The Court finds that there are no genuine issues of disputed fact as to these claims and that defendant is entitled to summary judgment as a matter of law.

### A. Governing law

#### i. Discrimination under Title VII and the ADEA

Title VII provides that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race. . . ." 42 U.S.C. § 2000e-2(a). The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's age [or] to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect h[er] status as an employee, because of such individual's age. . . ." 29 U.S.C. § 623(a)(1), (2). To establish a prima facie case of discrimination under Title VII or age discrimination under

the ADEA, plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position in question; and (4) she was replaced or treated less favorably than a similarly situated individual outside the protected class.[5] *Tschappatt v. Crescent Metal Products, Inc.*, -- F. App'x --, No. 19-3422, 2020 WL 260985, at *1 (6th Cir. Jan. 17, 2020) (ADEA) (citing *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003); *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008)); *See Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 654-55 (6th Cir. 2015) (Title VII) (citing *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012)). To prove a prima facie case of discrimination in a failure to promote case, a plaintiff must show that "(1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class[6] received the job at the time plaintiff's request for the promotion was denied." *Henry v. Abbott Laboratories*, 651 F. App'x 494, 499 (6th Cir. 2016) (quoting *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005)).

An adverse employment action is a "materially adverse change in the terms and conditions of [plaintiff's] employment." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 575-76 (6th Cir. 2004) (quoting *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999)). A "bruised ego," a "mere inconvenience[,] or an alteration of job responsibilities" is not enough to constitute an adverse employment action. *Id.* (citing *White,* 364 F.3d at 797) (quoting *Kocsis v. Multi-Care Mgmt. Inc.,* 97 F.3d 876, 886 (6th Cir. 1996)).

---

[5] The fourth element is modified under the ADEA and the plaintiff must show only that she was replaced or treated less favorably than a "significantly younger" person. *Grosjean*, 349 F.3d at 335.

[6] To satisfy the fourth prong under the ADEA, the comparator need only be "significantly younger."

18

To be considered "similarly situated" for purposes of the fourth prong of the prima facie case, the employment situation of the comparator and plaintiff must be similar "in all relevant aspects." *Romans v. Michigan Dept. of Human Services*, 668 F.3d 826, 837-38 (6th Cir. 2012) (quoting *Highfill v. City of Memphis,* 425 F. App'x 470, 474 (6th Cir. 2011)). In the disciplinary context, plaintiff must also show that the employees with whom she seeks to compare herself "engaged in acts of comparable seriousness." *Martinez v. Cracker Barrel Old Country Store, Inc.,* 703 F.3d 911, 917 (6th Cir. 2013). In making this assessment, the Court must consider factors such as whether plaintiff and the alleged comparators "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (citation and internal quotations omitted).

Once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Henry*, 651 F. App'x at 499 (citing *White*, 429 F.3d at 2438). If the employer satisfies this burden, the burden of production then shifts back to the plaintiff to show that the employer's proffered legitimate, nondiscriminatory reason for the adverse employment action was mere pretext for intentional discrimination. *Id.* (citing *White*, 429 F.3d at 238). In an age discrimination case, the ultimate burden of persuasion remains with the plaintiff to show "that age was the but-for cause of [her] employer's adverse action." *Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009) (internal citation and quotation marks omitted).

ii. *Hostile environment*

Title VII protects employees from discriminatory hostile or abusive work environments. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Savings Bank, FSB v. Vinson,*

477 U.S. 57, 64 (1986)). To prove a hostile work environment claim, a plaintiff must show that: (1) she was a member of the protected class; (2) she was subjected to unwelcome harassment, based on her protected status; (3) the harassment had the effect of unreasonably interfering with her work performance and created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer. *Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 878 (6th Cir. 2013) (citing *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008)). In terms of the third factor, the conduct must be "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Id.* (quoting *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000)).

In determining whether a work environment is objectively hostile or abusive, courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (citing *Harris*, 510 U.S. at 23). Conduct that is "merely offensive" is insufficient to support a hostile work environment claim. *Harris*, 510 U.S. at 21. "[C]ourts must determine whether the workplace is so permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Grace*, 521 F.3d at 678-79.

### iii. Retaliation under Title VII and the ADEA

Title VII and the ADEA prohibit retaliation against an employee because she has opposed any unlawful employment practice prohibited under Title VII or the ADEA, or because

she has made a charge under Title VII or the ADEA. 42 U.S.C. § 2000e-3(a); 29 U.S.C. §

623(d). To state a prima facie case of retaliation, a plaintiff must establish that (1) she engaged

in protected activity; (2) the defendant knew about the exercise of her protected rights; (3) the

defendant took adverse action ("actions that would dissuade a reasonable worker from making or

supporting a charge of discrimination"); and (4) a causal connection existed between the

protected activity and such adverse action. *Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d

624, 639 (6th Cir. 2009); *Mickey*, 516 F.3d at 523 (citations omitted). Certain written

reprimands could rise to the level of an adverse employment action, but a written reprimand

"would not have dissuaded a reasonable worker from making a claim of discrimination" where

no disciplinary action resulted from the written reprimand or where the written reprimand was

not related to "a larger pattern of intimidation." *Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir.

2013) (citing *Creggett v. Jefferson Cnty. Bd. of Educ.*, 491 F. App'x 561, 566 (6th Cir. 2012) ("A

written reprimand, without evidence that it led to a materially adverse consequence such as

lowered pay, demotion, suspension, or the like, is not a materially adverse employment action.").

 To show a causal connection exists between an employee's protected activity and an

adverse employment action, the plaintiff must demonstrate that the "desire to retaliate was the

but-for cause of the challenged employment action." *Henry*, 651 F. App'x at 505 (quoting *Univ.

of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)). "Although no one factor is

dispositive in establishing a causal connection, evidence that defendant treated the plaintiff

differently from similarly situated employees or that the adverse action was taken shortly after

the plaintiff's exercise of protected rights is relevant to causation." *Id.* (quoting *Nguyen v. City

of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). "Heightened scrutiny of an employee's work

after she engages in protected activity can also imply causation." *Id.* (citing *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 436 (6th Cir. 2009)). "Though temporal proximity alone may, in some circumstances, provide a causal inference, [the Sixth Circuit] has generally required the protected activity and adverse action to occur extremely close in time in order to make that inference." *Id.* (citing *Mickey*, 516 F.3d at 525). "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Id.* (quoting *Mickey*, 516 F.3d at 523) (quoting *Nguyen*, 229 F.3d at 563).

Opposing conduct that satisfies the first element of a retaliation claim includes "[c]omplaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices . . . ." *Johnson v. University of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). The plaintiff must have a reasonable, good faith belief that the defendant has committed an unlawful employment practice to state a claim for retaliation. *Yazdian*, 793 F.3d at 646). *See also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001) (considering whether the plaintiff could have reasonably believed that alleged harassment violated Title VII in determining whether the plaintiff's retaliation claim was actionable). The reasonable, good faith belief requirement has subjective and objective components. The subjective component requires that the employee complaining of an alleged unlawful employment practice "must 'actually believe[] that the conduct complained of constituted a violation of relevant law.'" *Yazdian*, 793 F.3d at 646 (quoting *Rhinehimer v. U.S. Bancorp Invs., Inc.,* 787 F.3d 797, 811 (6th Cir. 2015)). The objective component requires that "'a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee' would believe that the conduct complained of was unlawful." *Id.* Objective reasonableness is decided as a matter of law "only

when no reasonable person could have believed that the facts known to the plaintiff amounted to a violation or otherwise justified the employee's belief that illegal conduct was occurring." *Id.*

### B. Defendant is entitled to summary judgment

Plaintiff claims that since filing an EEO charge in 2003, the IRS has engaged in a "pattern and practice" of retaliation. (Doc. 1; Exh. B-6). Plaintiff claims she has been removed from her managerial position as a result of her "Senior Managers coercing her employees to file continuous frivolous Harassment Charges against the Plaintiff on several occasions." (Doc. 1 at PageID#: 12). Plaintiff appears to allege the following acts are part of the pattern or practice of retaliation: 1) Karen Berte's placement in plaintiff's personnel file of a handwritten note memorializing a conversation she had with plaintiff[7]; 2) management's denying her "developmental opportunities" or reassignment for 14 years following the filing of plaintiff's EEO charge in 2003; 3) a false accusation that plaintiff violated an employee's FMLA rights and harassed the employees; 4) an unlawful climate assessment of plaintiff's group performed by the IRS; 5) denial of developmental opportunities based on "lack of experience and time in grade" by Jennifer Becker, who was hired in 2006 and "sporadically developed as a Manager then Department Manager," but who allegedly had less experience and education than plaintiff; (5) senior management staff's failure to offer plaintiff any developmental or promotional opportunities and training from 2005 to the present; and 6) ongoing harassment and retaliation after plaintiff reported retaliation by Jim Rogers, Jr., who retired in December 2017, Operation Manager Steven Bowling, and Program Manager Gregory Hudson. (Doc. 1 at PageID#: 5, 15-17). Plaintiff also claims that she has been discriminated against and subjected to harassment by

---

[7] Berte was the Department Manager - IRS Compliance Service, SB/SE.

managers, employees, and Agency and EEO officials. The Court has deciphered plaintiff's claims to the best of its ability and finds that she has failed to establish a prima facie case of discrimination or retaliation as to each of the incidents at issue.

### i. August 12, 2015 counseling memorandum

Plaintiff claims she was discriminated against when on September 4, 2015, Jennifer Becker, Acting Department Manager, issued a counseling memorandum to her. (Doc. 23, Exh. 11). Plaintiff claims that Becker backdated unsubstantiated documentation and imposed unlawful disciplinary action against plaintiff. (Doc. 1 at PageID#: 11). The counseling memorandum is dated August 12, 2015, but it was not provided to plaintiff until September 4, 2015. (Doc. 25 at PageID#: 1153, n.2). The memorandum addressed plaintiff's "conduct and its impact on the workplace environment" in connection with two workplace interactions plaintiff had with a department manager, peer, and employee. (Doc. 23, Exh. 11). The memorandum described plaintiff's conduct as "not suitable of someone in [plaintiff's] position." (*Id.*). The first incident occurred on July 30, 2015. On that date, plaintiff "loudly demanded" that a Department Manager (DM) "do something about [plaintiff's] employees not listening to" her after plaintiff had asked an employee to remove an air freshener. (*Id.*). Plaintiff continued to discuss the incident in a loud voice after the DM asked plaintiff to calm down and lower her voice, and plaintiff complained about the employee's attitude and that of others in plaintiff's business unit. (*Id.*).

The second incident occurred on August 6, 2015. (*Id.*). On that date, plaintiff entered another manager's office and complained about an employee whose desk was right outside the manager's office. (*Id.*). Among other comments, plaintiff stated, "I don't care if Bonnie doesn't like me," which caused the employee to feel threatened and under personal attack by plaintiff.

(*Id.*). Plaintiff was advised that "[s]uch conduct seriously impairs the efficiency of the Service" (*Id.*, citing 5 C.F.R. § 2635.705(a)); she was given guidance on how to discuss problems concerning employees or other team members confidentially; and she was advised on how to obtain assistance from the Employee Assistance Program if she was experiencing difficulties or personal concerns. (*Id.*). Becker wrote on the memorandum, "Employee Refused to Sign," and Becker signed the memorandum and noted that she shared it with plaintiff on September 4, 2015. (*Id.*). Plaintiff testified at her deposition that she refused to sign the memorandum because she disagreed with the substance of it. (Doc. 23 at PageID#: 732).

Plaintiff has not established a prima facie case of discrimination based on the counseling memorandum. First, plaintiff offers no evidence to show that she suffered an adverse employment action in connection with the counseling memorandum as required to satisfy the second element of a prima facie case. The memorandum was non-disciplinary. (*Id.* at PageID#: 732-33). Plaintiff was not suspended because of the memorandum, she was not demoted, her pay was not affected, and she was not terminated. (*Id.* at PageID#: 128-29). Further, plaintiff has produced no evidence to establish the fourth element of a prima facie case. There is no evidence that shows similarly-situated individuals outside the protected class engaged in comparable conduct but were not counseled for their conduct. There is no other evidence which supports a reasonable inference that the counseling memorandum was issued to plaintiff based on her age or race.

Plaintiff also claims that her Department Manager, Becker, retaliated against her when Becker issued "a backdated [August 12, 2015] counseling memos" (sic) to plaintiff in September 2015 for incidents that allegedly happened in July and August of 2015. (Doc. 27 at PageID#: 1615). Plaintiff appears to suggest that Becker's failure to discuss the memo with her within 15

25

days of the dates of the incidents violated the Agency's collective bargaining agreement.[8] Plaintiff suggests that the memo was part of a broader pattern and practice of retaliation. (*Id.* at PageID#: 1618).

Assuming the Court has correctly interpreted plaintiff's argument, plaintiff has not shown that Becker retaliated against her by issuing the counseling memorandum. First, plaintiff has not introduced evidence to show that Becker's brief delay in documenting the incidents on which plaintiff was counseled, or any delay in counseling plaintiff after the incidents were documented, adversely impacted plaintiff's employment. Second, plaintiff has not submitted any evidence to show there was a causal connection between protected activity by her and Becker's issuance of the counseling memorandum. Plaintiff appears to suggest that the counseling memorandum was somehow connected to her discovery of a note that Karen Berte wrote and placed in plaintiff's file, which is discussed *infra*. (*Id.* at PageID#: 1617). Plaintiff alleges: "On September 4, 2015, after [plaintiff] discovered Karen Berte's handwritten note, Plaintiff's Department Manager (Jennifer Becker) issued a counseling memorandum for an incident that occurred a month earlier." (*Id.*). But plaintiff has not fleshed out her assertion or produced evidence that draws a connection between plaintiff's discovery of the handwritten note on August 14, 2015, and Becker's issuance of the counseling memo, which Becker had prepared on August 12, 2015, two days before plaintiff discovered the note.

In short, there is no genuine issue of fact as to whether plaintiff has established a prima facie case of discrimination or retaliation based on the August 12, 2015 counseling

---

[8] Plaintiff references Article 12, Section 9 of the "National Agreement," and a 15-day period for an employee to discuss or acknowledge "[n]egative material." (*Id.*).

memorandum. Plaintiff did not suffer an adverse employment action as a result of the memorandum, and she has not submitted evidence that permits a reasonable inference of a causal connection between protected activity plaintiff engaged in and the memorandum. Defendant is entitled to summary judgment on plaintiff's claims of discrimination and retaliation premised on the counseling memorandum.

### ii. *Karen Berte's handwritten Employee Performance File note*

Plaintiff contends that her Department Manager, Berte, discriminated and retaliated against plaintiff by placing a handwritten note of a conversation between the two women in plaintiff's Employee Performance File (EPF). (Doc. 1 at PageID#: 15; Doc. 23, Exh. 7; Doc. 27 at PageID#: 1608-09, 1616-17; *see* IRS 15-1594-F, filed on October 6, 2015). The note reads at the top: "Discussion of memo 3/25," and "Employee refused to sign." (Doc. 23, Exh. 7). The note is not entirely legible. It reads in part: "Exam is worst we['re] all racist"; "We all don['t] hire blacks & those you do you destroy them"; "We continue to let Benita get by [with] things and then she (M.P.) gets in trouble"; "M.P. has asked to be moved from Benita or Benita moved & we refuse"; and "She has a lawyer - she will file civil suit & sue me." (*Id.*). Plaintiff testified at her deposition that she discovered the note on August 14, 2015, when she reviewed her EPF. (Doc. 23 at PageID#: 699). Plaintiff alleges that the note, which "identified racial elements," communicated to all who reviewed the EPF plaintiff's "EEOC involvement" and race. (Doc. 27 at PageID#: 1608-09). Plaintiff alleges that Berte acted with intent and malice by placing the note in her file, and her action violated internal IRS policy. (*Id.*). Plaintiff claims that the note had a "dire and negative impact on [her] career." (*Id.* at PageID#: 1608).

Plaintiff has not produced evidence that establishes a prima facie case of discrimination based on Berte's placing the note in plaintiff's EPF. First, she has not shown that Berte's act of

writing or placing the note in the EPF was an adverse employment action. It is undisputed that the filing of the note was not a disciplinary measure. (Doc. 23 at PageID#: 720-21). Nor was any other disciplinary action taken against plaintiff as a consequence of the note. Plaintiff was not written up, she was not suspended, she did not lose any pay, and she was not demoted to a lower pay grade based on the note. (*Id.* at PageID#: 721-22). Plaintiff does not allege that anyone other than she and Berte saw the note before plaintiff discovered it in her EPF. Further, the note was not disseminated to any other individual before plaintiff attached the note to an email that she sent to Sherri Davis. (Doc. 23 at PageID#: 730). After Denice Vaughan in turn was informed of the note, she directed that it be removed from plaintiff's file and that no copies be retained, and plaintiff was informed that this action was taken on September 18, 2015. (Doc. 23, Exh. 9). Because Berte's placement of the note in plaintiff's file was not a materially adverse employment action, plaintiff has not established a prima facie case of discrimination based on Berte's action.

Plaintiff also has not established a prima facie case of retaliation based on the handwritten note. Plaintiff alleges that Berte's placement of the note in her EPF was in retaliation for an EEO claim plaintiff had filed against [Berte] and the Agency. (Doc. 27 at Page ID#: 1608). However, plaintiff has not pointed to any evidence to show that Berte's act could reasonably be construed as an adverse employment action that would dissuade a reasonable person from engaging in protected activity. Further, plaintiff has not produced evidence to show there is a causal connection between her protected activity and placement of the note in her file. Plaintiff only generally alleges that Berte retaliated against plaintiff "for filing an EEO claim against Berte and the Agency." (Doc. 27 at PageID#: 1609). Plaintiff does not aver when she filed an EEO charge against Berte, and she testified at her deposition that she does not know

when Berte wrote the note and put it in her file. Plaintiff therefore cannot rely on the temporal proximity between the two events to establish a causal connection. Plaintiff makes no other allegations that so much as suggest a connection between an EEO charge she filed against Berte and the handwritten note. Plaintiff's generalized allegation that a causal connection existed, unsupported by any citations to the record, is insufficient to withstand summary judgment. *See Cacevic v. City of Hazel Park*, 226 F.3d 483, 492 (6th Cir. 2000) (the Court has no obligation to "comb through the record to ascertain whether a genuine issue of material fact exists") (citing *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 407, 410 (6th Cir. 1992)).

Plaintiff has not produced evidence to show there is a genuine issue of material fact as to whether Berte's placement of the handwritten note in plaintiff's EPF was discriminatory or retaliatory. Defendant is entitled to summary judgment on these claims.

### iii. Failure to reassign plaintiff in 2015

Plaintiff alleges that the Agency retaliated against her after she filed EEOC charges and after she had reported Berte to Davis and Vaughan for placing the handwritten note in plaintiff's file. (Doc. 27 at PageID#: 1615, 1617). Plaintiff claims that the Agency retaliated against her by refusing to reassign her to a "lateral IR-11, Manager Position," as plaintiff and management had previously agreed, and attempting to demote her. (*Id.*). For the reasons explained *infra*, plaintiff has not produced evidence which, when construed in her favor, satisfies a prima facie case of retaliation based on the IRS's alleged refusal to reassign her to a "lateral" position. (*Id.* at PageID#: 1617).

The facts surrounding plaintiff's claim that defendant retaliated against her by refusing to reassign her to a new position in 2015 are disputed in many respects. Plaintiff testified at her deposition that she initiated the reassignment request by sending an email to Davis explaining

that she no longer wanted to be in her current work "atmosphere" and "environment," and Davis and Vaughan assured plaintiff that they would reassign her. (Doc. 23 at PageID#: 722). At some point, Vaughan asked plaintiff to personally meet with her and told plaintiff, "I have you reassigned." (*Id.*). However, plaintiff apparently filed a pre-complaint with the EEO after that discussion, which Vaughan learned about shortly before she was to meet with plaintiff. (Doc. 23, Exh. 8). The pre-complaint led Eric Savage of the EEO to arrange a settlement meeting between Vaughan and plaintiff. (*Id.*). Vaughan and plaintiff attended the September 18, 2015 settlement meeting in person, and Savage facilitated the meeting by telephone. The pre-complaint was not resolved at the settlement meeting. According to plaintiff, Vaughan refused to reassign her to another position as Vaughan had promised prior to the meeting. (Doc. 23, Exh. 8).[9] Instead, the "remedies" Vaughan proposed at the meeting were to remove plaintiff as a manager, "demote" her to a non-manager's position, and not allow her to compete for another position for two years. (*Id.*). Plaintiff testified at her deposition that the non-manager position offered to her was a tax examiner position. (Doc. 23, PageID#: 725). Plaintiff "did not think that Mrs. Vaughan would have offered a younger person these options," and she therefore declined Vaughan's offers. (Doc. 23, Exh. 8).

According to Vaughan, after plaintiff clearly told her that plaintiff did not "think that she was in the right position as a leader in the organization," Vaughan offered "to reassign her to a GS-7 Tax Examiner" position in the Agency's Cincinnati campus. (*Id.*). Vaughan considered the offer to be "in line with [plaintiff's] request in her pre-complaint [in] which she stated she

---

[9] Both plaintiff and Vaughn emailed Savage after the settlement meeting and gave their versions of what had transpired in the meeting. (Doc. 23, Exh. 8).

wanted to be realigned[10] to another position in which she qualified." (*Id.*). Vaughan denied that she "offer[ed] to promote [plaintiff] or demote her" given that a GS-7 level position is comparable to an IR-11 position. (*Id.*).

While the parties do not completely agree on the circumstances that surrounded the job reassignment offer in 2015, the material facts are not disputed. These undisputed facts do not permit a reasonable inference that defendant subjected plaintiff to an adverse employment action that satisfies the second prong of a prima facie. Plaintiff has not offered any evidence to show that defendant withdrew an offer to reassign her to a position that was at a higher grade-level or was better paying that her current position. In addition, there is no evidence which supports a reasonable inference that reassignment to the tax examiner job would have been a demotion. Plaintiff has offered only her "subjective impression concerning the desirability" of the position she held when she requested reassignment, which "is insufficient to render an employer's action materially adverse." *Flynn v. Oakland County*, No. 05-cv-73850, 2009 WL 2046133, at *8 (E.D. Mich. July 9, 2009) ("Importantly, however, an individual's 'subjective impression concerning the desirability of one position over another' is insufficient to render an employer's action materially adverse.") (quoting *Freeman v. Potter*, 200 F. App'x 439, 442 (6th Cir. 2006) (citations omitted)).

Plaintiff also has not produced evidence to establish the fourth element of a prima facie case of retaliation, which is a causal connection between her protected activity and the Agency's alleged retaliatory act of withdrawing its offer to reassign plaintiff. (Doc. 27 at PageID#: 1615, 1617). Plaintiff has not shown there is a close temporal proximity between the protected activity

---

[10] Presumably, Vaughan meant to say "reassigned" rather than "realigned."

she allegedly engaged in - filing EEOC charges and reporting Berte to Davis and Vaughn for placing the handwritten note in plaintiff's EPF - and defendant's withdrawal of the offer to reassign plaintiff. Plaintiff testified at her deposition that she is not certain of the timeline of these events. (Doc. 23 at PageID#: 724-29). The evidence does not support an inference of a causal connection based on close temporal proximity. *See Mickey*, 516 F.3d at 523.

Plaintiff has not produced any other evidence that permits an inference of a causal connection between her protected activity and the alleged withdrawal of the reassignment offer. Plaintiff engages in nothing more than factually unsupported speculation to show that Berte and Vaughan were motivated by retaliation. Plaintiff's speculative allegations are not sufficient to create a genuine issue of fact on summary judgment. *Nilles v. Givaudan Flavors Corp.*, 521 F. App'x 364 (6th Cir. 2013) (citations omitted).

Plaintiff has not produced evidence that discloses a genuine issue of material fact as to whether defendant unlawfully retaliated against her by withdrawing an offer to reassign plaintiff to a different position. Defendant is entitled to summary judgment on this claim.

*iv. January 2016 harassment allegations/management inquiry*

Plaintiff complained of discrimination in EEO charge IRS-16-0224-F in connection with a management inquiry into employee complaints of harassment made against her in January 2016. (*See* Doc. 1, Exh. A-10). In response to the complaints, Becker reported plaintiff to the Agency's Anti-Harassment Policy point of contact and also initiated a management inquiry into the allegations. (Doc. 23, Exhs. 27, 33). In addition, Becker requested that an individual in the Agency's "Equity Diversity and Inclusion Office" conduct a climate assessment of "how effectively [members of plaintiff's department] are working together as a team." (Doc. 23, Exh.

35). Becker encouraged participation in the assessment but informed team members that their participation was not mandatory. (*Id.*).

In February 2016, Brian Minnich conducted an inquiry into the harassment allegation. (Doc. 23, Exh. 33). He concluded that plaintiff had followed all existing IRS policies and procedures. (*Id.*). Minnich recommended "an Engagement workshop as well as a communication workshop for the work unit." (*Id.*). He forwarded the report and all documentation to Susan Quackenbush for consideration and a determination as to whether further action was warranted. (*Id.*). Quackenbush found no violations of "the National Agreement, the Internal Revenue Manual or any other law or provision," and she denied the grievance in its entirety. (*Id.*, Exh. 34). Quackenbush addressed a concern that employees had raised during the grievance process, which was that no action had been taken on the results of the climate assessment. (*Id.*). Quackenbush agreed that action had not yet been taken on the results of the climate assessment, and she stated she would instruct the Examination Operations Manager "to initiate measures in Team 201 to improve morale, teamwork, communications and the health of the team." (*Id.*).

Plaintiff alleged in her EEO complaint that management discriminated against her by conducting the January 2016 climate assessment, which she claimed was a form of harassment. (Doc. 1, Exh. A-10). Plaintiff further alleged in her response to defendant's motion for summary judgment that Becker's response to the employees' harassment allegations was retaliatory. Plaintiff claims that Becker retaliated against her by filing "a frivolous Anti-Harassment Claim" on behalf of employees under plaintiff's supervision four months after plaintiff had reported Becker to the EEOC. (Doc. 27 at PageID#: 1618). Plaintiff also notes that Becker was "acting

Department Manager for Ms. Berte in September, 2015," which was after plaintiff had discovered Berte's handwritten note. (*Id.*).

Plaintiff has not produced evidence to support a claim of discrimination or retaliation based on management's response to employee complaints made against her in January 2016. There is no evidence that either Becker's report of the employees' complaints, or the ensuing climate assessment, led to an adverse employment action. Further, there is no evidence of a causal connection between plaintiff's protected activity and actions defendant took in response to employee complaints against plaintiff. Defendant is entitled to summary judgment on plaintiff's claim that defendant discriminated and retaliated against plaintiff by responding to employee complaints against her.

### v. *April 2016 incident regarding instructions to team members*

Plaintiff alleges in her memorandum in opposition to defendant's motion for summary judgment that "Senior Leaders" retaliated against her for her protected activity by accusing plaintiff of violating an employee's FMLA rights. (Doc. 27 at PageID#: 1615-16). Plaintiff's allegations related to this incident are difficult to follow, but they apparently relate to an allegation plaintiff raised in IRS-16-0224-F. Plaintiff alleged in that EEO charge that in April 2016, her senior manager "undermined her authority by advising her employee to seek assistance from the FMLA review board when her employee disagreed with [plaintiff's] request for additional medical information." (Doc. 1, Exh. A-10). The Agency found in its FAD that there was no evidence that the senior manager's actions were "hostile, unreasonable, or motivated by discriminatory animus." (*Id.*). Plaintiff likewise has not produced any evidence here to show that defendant acted in a hostile, discriminatory, or retaliatory manner by undermining her

authority related to an employee FMLA matter. Defendant is entitled to summary judgment on plaintiff's claims based on this incident.

### vi. Hostile environment

Plaintiff alleges in her complaint that she was subjected to a "hostile environment," but she has not produced evidence to show she was subjected to severe and pervasive harassment that falls within the purview of the anti-discrimination laws. Apart from the incidents addressed *supra*, plaintiff's allegations and supporting documentation indicate that her claim of a hostile environment is premised on her dissatisfaction with her work environment and the team of employees she was assigned to supervise. Plaintiff alleges that defendant forced her to work and manage in a work environment made hostile by the employees she supervised (Doc. 1 at PageID#: 5, citing F-1 through F-57), and by defendant's failure to provide plaintiff training for these "Scheduled [sic] (A) Employees (Employees with mental/physical disabilities who were hired under a Special Government Program[)]." (*Id.*). Plaintiff claims that she "never encountered any problems in management until she was hired to manage the Clerical Team in 2010." (Doc. 1 at PageID#: 12). Plaintiff alleges that the Agency and senior leadership staff members Brian McNeal and Betsy Rollins knowingly placed her in a "hostile environment" because they were aware she managed individuals with mental and physical disabilities who "were hired of the special provision of the Federal Government American Disability Act (Schedule A)." (Doc. 27 at PageID#: 1610). Plaintiff claims that Rollins and McNeal did not inform her of "the special Schedule (A) Employee" [sic] upon hiring her, and they did not give her any training or inquire into whether she had any training "managing employees with mental issue(s)." (*Id.*). Plaintiff alleges that management "failed to support [her] in carrying out any" disciplinary action against the employees she managed who engaged in unlawful behavior.

(Doc. 1 at PageID#: 12). She claims these employees "imposed" abuse on her. (*Id.*). Plaintiff alleges that the Agency and its leaders were aware of her team members' "dysfunction," but they chose to ignore their behavior and subjected plaintiff to unlawful and meritless harassment charges after Berte, Becker and the NTEU "coerc[ed]" plaintiff's employees "to keep a daily log on" her. (Doc. 27 at PageID#: 1610). Plaintiff claims that she asked to be "reassigned because of the negative and abusive behavior of her employees." (Doc. 1 at PageID: #12, citing Exh. E-1).

Though plaintiff was dissatisfied with her work environment and the support she received from management, plaintiff has not alleged unwelcome harassment based on her race or age, or in retaliation for protected activity. Further, the documentation plaintiff has submitted does not support a finding that she was denied training for a reason related to race or age, or that she was denied training in retaliation for engaging in protected activity. The documentation pertains largely to employee workplace interactions and complaints that had nothing to do with race or age and that had no apparent connection to any protected activity. (*See* Doc. 1, Exhs. F-1 to F-57; Exh. E-1- email related to plaintiff's request for a voluntary reassignment because she felt "threaten [sic] for my team and my safety as a result of [a team member's] questionable behavior and FMLA Documentation."). Plaintiff's subjective dissatisfaction with the team of employees she supervised and the atmosphere she worked in is insufficient to support a hostile environment claim under the anti-discrimination and anti-retaliation laws. *See Warf*, 713 F.3d at 878 (plaintiff must show she was subjected to unwelcome harassment based on her protected status or retaliation for protected conduct, and that the harassment created an objectively intimidating, hostile, or offensive work environment, to prove a prima facie case of a hostile environment); *EEOC v. Rocket Enters.*, No. 06-14319, 2008 WL 724613, *4 (E.D. Mich. Mar. 18, 2008) ("In

the event that reported conduct is not serious enough that a reasonable person could believe it violated Title VII, a claim for retaliation will not lie.").

Plaintiff has not identified members of management who created a hostile environment; she has not alleged acts that constituted a severe and pervasive atmosphere of hostility; and she has not described acts that could reasonably be construed as conduct that was directed against plaintiff because of her race or age or in retaliation for previous complaints of discrimination or retaliation. Plaintiff has not alleged an actionable hostile environment claim.

### vii. Remaining allegations

Plaintiff alludes to additional acts in her complaint and in her response to defendant's motion for summary judgment that she suggests were taken in retaliation for her protected activity or to deter her from engaging in protected activity. Plaintiff claims that her personal taxes were unlawfully audited and that an unlawful credit background check was run on her.[11] (Doc. 1 at PageID#: 11). Plaintiff also alleges that she was "threatened that she better no [sic] file charges against the Agency and Ms. Jennifer Becker which was witness [sic] by a Mr. Bryan Balser (Labor and Relation Specialist)."[12] (Doc. 1, PageID#: 11-12). However, plaintiff does not allege any additional facts pertaining to these incidents which indicate they were motivated

---

[11] This is an apparent reference to an "Employee Tax Compliance" referral related to plaintiff's 2003 taxes, which was made to the Wage and Investment Division of the IRS. (Doc. 1, Exh. B-19). Plaintiff received a letter informing her that it was determined that plaintiff "reasonably believed that [she] had reported all of [her] 2003 income on [her] 2003 Federal income tax return," and the case was closed without action. (*Id.*). The letter advised plaintiff that no copy would be filed in her Official Personnel Folder unless she requested it. (*Id.*). Plaintiff signed the letter and dated it to indicate she had received a copy of it on December 17, 2006. (*Id.*).

[12] Defendant addresses another claim of alleged discrimination or retaliation in his motion for summary judgment that plaintiff raised in EEO charge IRS-16-0224-F. Plaintiff alleged in the EEO charge that on March 29, 2016, her manager issued her a memorandum regarding a Performance Feedback Conversation held on March 25, 2016, that contained criticism of plaintiff. (Doc. 1, Exh. A-2). The Court need not address this incident because plaintiff does not refer to the conversation in her complaint.

by a retaliatory animus. Plaintiff provides no time frame for these alleged acts of retaliation. She does not allege who ordered the audit of her personal taxes or the credit check, and she does not allege who warned her against filing charges against the Agency and Becker. Further, plaintiff does not allege facts to indicate there was a causal connection between any protected activity and these alleged threats and actions. Plaintiff cannot pursue a claim of retaliation based on these vague allegations.

In addition, plaintiff cannot pursue a claim of retaliation based on her vague allegations that management has continued to retaliate against her for "prior protected activity" by denying her "developmental opportunities" within her organization. Plaintiff has not provided a time frame for the alleged continuing retaliation; she has not identified the individuals who have denied her these opportunities; and she has not produced evidence to draw a causal link between protected activity she has engaged in and a "developmental opportunity" she was denied. Insofar as plaintiff seeks to premise a claim of discrimination on allegations that she has not been "reassigned" as management had promised or that she continues to be denied "developmental opportunities" based on her race or age, she has not produced sufficient evidence to support her claim. *See Cacevic*, 226 F.3d at 492 (the Court is not required to comb the record for evidence to support plaintiff's claims). Plaintiff cannot establish a prima facie case of discrimination by making generalized allegations that defendant denied her job reassignments or promotions based on her race or age.

## IV. Defendant is entitled to summary judgment

Defendant has established that there are no genuine issues of material fact and that he is entitled to summary judgment as a matter of law on plaintiff's claims of discrimination and retaliation. The Court should therefore grant defendant's motion and issue judgment in his favor.

**IT IS THEREFORE RECOMMENDED THAT:**

Defendant's motion for summary judgment under Fed. R. Civ. P. 56 (Doc. 25) be

**GRANTED.**

Date: 3/2/2020

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MARGARET L. POSEY,
    Plaintiff,

    vs.

STEVEN T. MNUCHIN,
SECRETARY OF TREASURY,
    Defendant.

Case No. 1:18-cv-299
Cole, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).